IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| RELEASE MARINE, INC. and MARINE TABLES, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>JASON W. FREEMAN and CAT 5 MARINE INDUSTRIES, INC.,<br><br>    Defendants. | CASE NO. CV421-203 |

## O R D E R

Before the Court is Defendants Jason W. Freeman and Cat 5 Marine Industries, Inc.'s, Motion to Dismiss, or in the Alternative, Motion for a More Definite Statement. (Doc. 9.) Plaintiffs Release Marine, Inc. and Marine Tables, Inc., have responded in opposition to Defendants' motion. (Doc. 11.) For the following reasons, Defendants' motion is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE** with leave to amend.

### BACKGROUND[1]

On July 12, 2021, Plaintiffs filed this action under 28 U.S.C. § 1332 alleging that Freeman, Plaintiffs' former employee, stole Plaintiffs' trade secrets and utilized the trade secrets for the

---

[1] For the purposes of this Order, the Court will accept all factual allegations in the Complaint as true and construe all allegations in the light most favorable to Plaintiffs. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).

benefit of his competing business, Cat 5. (Doc. 1.) Plaintiffs design and manufacture high-end, custom sport fishing equipment and yacht furniture in Savannah, Georgia. (Doc. 1 at ¶ 11.) Plaintiffs' offerings include tables, helm chairs, freestanding-rocket launchers, battle saddles, custom step boxes, and barstools. (Id.) Plaintiffs are separate companies but share the same production facility and some of the same employees.[2] (Id. at ¶ 12.) Between 2003 and July 24, 2020, Freeman worked for both Plaintiffs as a skilled craftsman and in other capacities.[3] (Id. at ¶ 13.)

To facilitate the manufacturing process for their custom-made marine furniture, Plaintiffs create what they refer to as CAD drawings. (Id. at ¶ 15.) Each CAD drawing contains precise measurements and technical information needed to manufacture a particular item of marine furniture. (Id. at ¶ 16.) Plaintiffs' employees use these CAD drawings to cut wood and other material for the construction of their marine furniture products. (Id. at ¶ 17.) The CAD drawings are valuable to Plaintiffs because they can be used repeatedly to manufacture future orders at reduced costs. (Id. at ¶ 21.) Plaintiffs estimate they expended $700,000

---

[2] Plaintiffs' disclosure statement shows that Plaintiffs share the same CEO and CFO. (Doc. 2 at 1-2.)
[3] According to Plaintiffs' complaint, Freeman was working for Marine Tables prior to leaving to work for Cat 5. (Doc. 1 at ¶ 14.)

in labor costs to create all the CAD drawings in their computer files. (Id. at ¶ 34.)

Plaintiffs took steps to maintain the secrecy of their CAD drawings which included limiting access to only employees who needed CAD drawings to perform their job duties; requiring employees to have secure logins; allowing access only through company computers; and prohibiting employees from sharing CAD drawings with third parties. (Id. at ¶ 19.) While he was their employee, Plaintiffs allowed Freeman access to the CAD drawings because he created CAD drawings and needed access to CAD drawings as part of Plaintiffs' manufacturing process. (Id. at ¶ 20.)

On February 13, 2020, while Freeman was still employed by Marine Tables, Cat 5 was officially incorporated in Florida. (Id. at ¶ 23; Doc. 1, Attach. 1 at 2.) At the time, Cat 5's officers and directors included James Lowery and Michael Demuro. (Doc. 1, Attach. 1 at 3.) On or about July 24, 2020, Freeman informed his supervisors at Marine Tables that he was resigning and that he planned to move to Florida to start his own business doing finishing work on yachts. (Doc. 1 at ¶ 26.) Freeman assured his supervisors that his new business would not manufacture marine furniture and that he would never compete against Plaintiffs. (Id.)

Cat 5 has a production facility in Stuart, Florida, where it manufactures custom-made marine furniture. (Id. at ¶ 27.) The marine furniture that Cat 5 manufactures and sells is the same

3

type of marine furniture that is manufactured and sold by Plaintiffs. (Id. at ¶ 29.) Defendants post photographs on social media which depict marine furniture that is identical, or virtually identical, to the furniture Plaintiffs design and manufacture with their CAD drawings. (Id. at ¶ 30.) Cat 5's February 1, 2021, annual report lists Freeman as its President. (Doc. 1, Attach. 2 at 2.)

Plaintiffs allege that, prior to leaving Marine Tables, Freeman misappropriated Plaintiffs' CAD drawings for use by Cat 5. (Doc. 1 at ¶ 25.) Plaintiffs further allege that Defendants used the CAD drawings to manufacture and sell marine furniture. (Id. at ¶ 32.) Based on these allegations, Plaintiffs bring a cause of action against both Defendants for misappropriation of trade secrets under the Georgia Trade Secrets Act ("GTSA"). (Id. at ¶¶ 39-52.) Plaintiffs also bring a claim for preliminary and permanent injunctive relief. (Id. at ¶¶ 53-57.) Now, Defendants move to dismiss Plaintiffs' complaint for failure to state a claim or, alternatively, for a more definite statement. (Doc. 9.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129

4

S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. at 678, 129 S. Ct. at 1949 (alteration in original) (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (quotation omitted), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449, 132 S. Ct. 1702, 182 L. Ed. 2d 720 (2012). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

5

plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. at 1966). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." Sinaltrainal, 578 F.3d at 1268 (quotation omitted).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Id. at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" Iqbal, 556 U.S. at 678, 129 S. Ct. at 1950. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545, 127 S. Ct. at 1959).

## ANALYSIS

As stated previously, Plaintiffs bring a claim against both Defendants under the GTSA, alleging that Defendants misappropriated Plaintiffs' trade secrets. (Doc. 1 at ¶¶ 39-52.) "A claim for misappropriation of trade secrets under the [GTSA]

requires a plaintiff to prove that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.' " Cap. Asset Rsch. Corp. v. Finnegan, 160 F.3d 683, 685 (11th Cir. 1998) (quoting Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1410 (11th Cir. 1998)).

Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 9 at 1.) Defendants contend Plaintiffs' complaint makes only conclusory allegations that the CAD drawings have economic value or, even if they did have economic value, that Defendants misappropriated the CAD drawings. (Id. at 5-7.) Therefore, Defendants contend that Plaintiffs' complaint is insufficient to state a viable misappropriation of trade secrets claim under the heightened pleading standard created by Twombly and Iqbal. (Id. at 6-7.) In response, Plaintiffs argue that they have alleged specific facts to support an inference that the CAD drawings have economic value and that the Defendants misappropriated the CAD drawings. (Doc. 11 at 6-10.) The Court will address the parties' arguments on both issues in turn.

I.  PLAINTIFFS ADEQUATELY ALLEGED THE CAD DRAWINGS ARE TRADE SECRETS

The Court will now consider whether Plaintiffs adequately allege the first element of their GTSA claim — that they possessed

7

a trade secret. The GTSA defines trade secrets as information not commonly known by or available to the public that:

> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4). Trade secrets can include methods, financial plans, product plans, or lists of actual or potential customers. Id. In their motion to dismiss, Defendants only dispute whether the CAD drawings have economic value as required by O.C.G.A. § 10-1-761(4)(A).[4] (Doc. 9 at 5.) According to Defendants, any prior CAD drawings would be "worthless" to their production of new marine furniture since, as Plaintiffs highlight in their complaint, their products are all custom-made. (Id.) The Court disagrees.

Plaintiffs clearly allege that Defendants can use the CAD drawings to "manufacture custom-made furniture that is identical, or virtually identical, to custom-made furniture manufactured by Plaintiffs, more quickly and less expensively." (Doc. 1 at ¶ 36.) Plaintiffs also allege that the "CAD drawings are valuable to Plaintiffs because they can be used repeatedly for future orders"

---

[4] Defendants do not dispute whether Plaintiffs adequately alleged that they took reasonable measures to maintain the secrecy of the CAD drawings.

8

and that "[t]he use of existing CAD drawings reduces manufacturing costs and speeds up the manufacturing process." (Id. at ¶ 21.) Ultimately, it could be determined that the CAD drawings are not valuable trade secrets. However, at this stage, the Court finds it is reasonable to infer that the CAD drawings, which are essentially design blueprints, would be valuable to a competing company that produces identical, or virtually identical, products. Accordingly, the Court finds that Plaintiffs adequately allege that the CAD drawings are trade secrets.

II. PLAINTIFFS FAILED TO ADEQUATELY ALLEGE MISAPPROPRIATION

The Court will now consider whether Plaintiffs adequately allege the second element of their GTSA claims — that Defendants misappropriated the CAD drawings. Misappropriation is defined in the Official Code of Georgia as follows:

(2) "Misappropriation" means:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of a trade secret;

(ii) At the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

9

> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (iii) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

O.C.G.A. § 10-1-761(2). Further, "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a . . . duty to maintain secrecy. O.C.G.A. § 10-1-761 (1).

On the misappropriation element of their claims, Plaintiffs' complaint is wholly deficient. Under their GTSA cause of action section, Plaintiffs simply recite the elements of a misappropriation claim. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 ("[A] formulaic recitation of the elements of a cause of action will not do." (quoting Twombly, 550 U.S. at 555, 127 S. Ct. at 1965)). Plaintiffs argue that they specifically allege misappropriation in paragraphs 45 and 46 of their complaint. (Doc. 11 at 6-7.) These paragraphs contain nothing more than "legal conclusion[s] couched as factual allegation[s]" and are "not entitled to the assumption of truth." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.

Plaintiffs do not allege specific facts that would support an inference that Defendants engaged in activity falling under

10

O.C.G.A. § 10-1-761(2)'s definition of misappropriation. (Doc. 1 at ¶¶ 40-52). In their factual allegations section, Plaintiffs merely allege that "[p]rior to leaving Marine Tables, Defendant Freeman misappropriated CAD drawings owned by Plaintiffs for use by Defendant CAT 5" and that "[u]pon information and belief, Defendants have manufactured and sold marine furniture with CAD drawings misappropriated from Plaintiffs." (Id. at ¶¶ 25, 32.) In the absence of "further factual enhancement," these conclusory allegations are insufficient to state a claim that is plausible on its face. Twombly, 550 U.S. at 557, 127 S. Ct. at 1966; see also Resnick v. City of Troy, No. 2:17-CV-815-ECM, 2019 WL 2092567, at *6 (M.D. Ala. May 13, 2019) ("Conclusory allegations founded on 'information and belief' are insufficient to defeat a motion to dismiss." (citing Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013); Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc., No. 2:17-cv-01787-AKK, 2018 WL 2299249, *2 (N.D. Ala. May 21, 2018))).

Notably, even if Freeman did acquire the CAD drawings prior to resigning from Marine Tables this acquisition does not constitute misappropriation because, as Plaintiffs allege, Freeman had access to these documents as part of his employment. (Doc. 1 at ¶ 20.) "Even assuming that [Freeman] did have knowledge of the Plaintiffs' trade secrets, there is no evidence that any such information was obtained in any way other than by voluntary disclosure by the Plaintiffs." Onbrand Media v. Codex Consulting,

11

Inc., 301 Ga. App. 141, 149, 687 S.E.2d 168, 175 (2009). Therefore, Plaintiff has failed to allege facts showing that Freeman's acquisition of the CAD drawings was achieved through improper means. Cf. AirWatch LLC v. Mobile Iron, Inc., No. 1:12-cv-357-JEC, 2013 WL 4757491, at *5 (N.D. Ga. Sept. 4, 2013) (finding plaintiff adequately alleged the defendant used improper means to acquire trade secrets by describing "defendant's use of false identities, email addresses, phone numbers, and a fake business").

The only remaining avenue for Plaintiffs to state a misappropriation claim is to allege facts showing Defendants improperly disclosed or used the CAD Drawings. O.C.G.A. § 10-1-761(2)(B). Here, Plaintiffs' complaint contains no more than a bare allegation that Defendants used the CAD drawings to manufacture marine furniture. (Doc. 1 at ¶¶ 28, 32.) Plaintiffs have not alleged specific facts which would support an inference that Freeman kept any CAD drawings he properly acquired while working for Plaintiffs or that Freeman shared those CAD drawings with Cat 5 or any other entity. See Putters v. Rmax Operating, LLC, No. 1:13-CV-3382-TWT, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) (granting motion to dismiss where defendant acquired trade secrets by proper means during his employment and plaintiff made bare allegations that defendant disclosed the trade secrets to his new company).

12

In their response brief, Plaintiffs argue that they alleged facts to support their misappropriation claim in the factual allegations section of their complaint. (Doc. 11 at 8-9.) Plaintiffs highlight their allegations that Freeman had access to CAD drawings during his employment, that Freeman lied to Plaintiffs about leaving to work for a competing business, and that Cat 5 manufactures identical, or virtually identical, products to those manufactured by Plaintiffs. (Id.) Even accepting these allegations as true, these facts are "merely consistent with [Defendants'] liability, [and] stop[] short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted.) The fact that Freeman possessed trade secrets obtained by proper means and later went to work for a competitor without informing Plaintiffs is insufficient to show that either Freeman or Cat 5 misappropriated those trade secrets. Plaintiffs fail to "take the next, necessary step and allege specific facts showing [Freeman or Cat 5] ever threatened to use or disclose [Plaintiffs'] trade secrets." AWP, Inc. v. Henry, No. 1:20-cv-01625-SDG, 2020 WL 6876299, at *4 (N.D. Ga. Oct. 28, 2020) (emphasis omitted). To hold otherwise would undermine the purposes of heightened pleading standards by imposing significant litigation costs on any employee that leaves their employer for a competing business simply because

13

the employee previously had access to trade secret information. See Putters, 2014 WL 1466902, at *3.

Because Plaintiffs fail to adequately allege Defendants misappropriated their trade secrets, Plaintiffs' GTSA claims are due to be dismissed. Finally, as the Court has found Plaintiffs' substantive claims should be dismissed, Plaintiffs' claims for injunctive relief are also subject to dismissal. See Bilal v. Wells Fargo Bank, N.A., No. 1:12-CV-3708-TWT, 2014 WL 814228, at *4 (N.D. Ga. Jan. 15, 2014) (quoting Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011)). However, while Plaintiffs' complaint, as pled, fails to satisfy the requirements of Rule 8(a)(2), the Court finds that "a more carefully drafted complaint might state a claim" for relief. See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 F. App'x 925, 929 (11th Cir. 2016) (per curiam) (quotation omitted). In light of this finding, and because Plaintiffs have not yet amended their pleadings, the Court finds that dismissal with prejudice is not appropriate at this stage. Blackburn v. Shire US, Inc., No. 2:16-CV-963-RDP, 2017 WL 5013578, at *1 (N.D. Ala. Nov. 2, 2017) ("In cases where a plaintiff has acted in good faith and has not been given an initial chance to amend its complaint, dismissal with prejudice is a remedy of last resort." (citing Eiber, 673 F. App'x at 929)). Accordingly, although Defendants'

motion to dismiss (Doc. 9) is **GRANTED**, Plaintiffs' complaint is **DISMISSED WITHOUT PREJUDICE** with leave to amend.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 9) is **GRANTED**, and Plaintiffs' Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are directed to file an amended complaint within **fourteen (14) days** of this order.[6]

SO ORDERED this 8th day of March 2022.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[5] Because the Court is allowing Plaintiffs leave to amend their complaint, Defendants' alternative request for a more definite statement is **DISMISSED AS MOOT**.

[6] The Court will not accept any amended complaint that incorporates by reference any factual allegation or argument contained in an earlier filing. Plaintiffs' amended complaint should be a stand-alone filing that independently contains all the factual allegations necessary to state a claim for relief.